COLUMBUS BAR ASSOCIATION *v*. MANGAN.

[Cite as *Columbus Bar Assn. v. Mangan,*

123 Ohio St.3d 250, 2009-Ohio-5287.]

*Attorneys — Misconduct — Handling a legal matter without adequate preparation — Representing multiple clients without obtaining consent from each client after full disclosure — Public reprimand.*

(No. 2009-1127 — Submitted August 11, 2009 — Decided October 13, 2009.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 08-051.

_____

**Per Curiam**.

**{¶ 1}** Respondent, Patrick F. Mangan of Columbus, Ohio, Attorney Registration No. 0016104, was admitted to the practice of law in Ohio in 1979. The Board of Commissioners on Grievances and Discipline recommends that we publicly reprimand respondent, based mainly on findings that he undertook the representation of a father, son, and daughter-in-law without first advising them of the risks presented by their potentially conflicting interests and obtaining each person's consent to having a single advocate. We accept the board's finding that respondent's conduct violated ethical standards incumbent on Ohio lawyers and the recommendation for a public reprimand.

**{¶ 2}** Relator, Columbus Bar Association, charged respondent with violations of the Disciplinary Rules of the Code of Professional Responsibility, including DR 5-105(C) (prohibiting a lawyer from representing multiple clients with conflicting interests unless "it is obvious that [the lawyer] can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of [the

lawyer's] professional judgment on behalf of each") and 6-101(A)(2) (prohibiting a lawyer from undertaking a legal matter without adequate preparation under the circumstances). A three-member panel of the board heard the case, including the parties' stipulations to the cited misconduct, made findings of fact and conclusions of law, and recommended a public reprimand. The board adopted the panel's findings of misconduct and recommendation.

{¶ 3} The parties have not objected to the board report.

## Misconduct

{¶ 4} Respondent has practiced for 30 years in probate and real estate law, working for various employers, including the Legal Aid Society of Columbus, UAW Legal Services, and Hyatt Legal Services. He practiced in association with several attorneys from 1995 until 2005, when he opened his own practice in Columbus.

{¶ 5} A man belonging to a prepaid legal services plan consulted respondent in January 2005 about a pending foreclosure action. CIT Group/Consumer Finance, Inc. ("CIT"), had filed the action in early December 2004, seeking to foreclose on a single-family dwelling that the man and his son had inherited in June 2002. Respondent agreed to represent all defendants in the foreclosure action: the father, his son, and the son's wife.

{¶ 6} Despite this agreement, respondent never communicated with either the son or the daughter-in-law, relying instead on the father's assurances that the father was acting on behalf of his son and daughter-in-law. But in fact, the couple did not know of the foreclosure proceedings. And even before the foreclosure proceedings began, the couple had been dissatisfied with the father's decisions about the property.

{¶ 7} In 2002, the father had borrowed $37,194 (approximately one-half of the equity in the appraised value of the house) to upgrade the house so he could move into it or the father and son could sell it. The father and son signed a

mortgage against the house. In the years that followed, the father made some improvements but ultimately gutted the kitchen. The son realized the extent of disrepair, and in 2005, he and his wife refused to allow the father to borrow more money by using the home as collateral.

{¶ 8} But by then, the home was already in foreclosure because, unknown to his son and daughter-in-law, the father had stopped making mortgage payments sometime in 2004. And by the time the father consulted respondent in early 2005, the balance owed on the mortgage had grown to $47,700, the cost to reinstate the loan was $10,000, and the homeowners needed another $20,000 loan to complete the kitchen, roof, and heating, ventilation, and air conditioning renovations. Thus, after reinstating the loan, completing the necessary renovations, and selling the property for the new estimated fair market value of $75,000, including paying a six-percent realtor commission ($4,500) and closing costs ($2,000), the homeowners would have realized only about $790 in profit.

{¶ 9} Respondent discussed at length with the father the possibility of reinstating the loan, but the father did not have the financial resources. Respondent consequently filed an answer to the complaint, but without any input from the son and daughter-in-law. The court thereafter granted summary judgment in favor of CIT, and the house sold at a sheriff's sale for $53,000, $22,000 under the appraised value.

{¶ 10} The son and daughter-in-law did not learn of the foreclosure until Christmas 2005, when a neighbor advised that the property had been sold. The daughter-in-law soon contacted respondent, who only then realized his mistake. The couple filed a grievance with relator, hired another attorney, and ultimately recovered $3,700 in proceeds from the foreclosure that had been held in escrow.

{¶ 11} Respondent, who was not compensated for his representation, candidly admitted that he had "dropped the ball" by failing to contact the son and daughter-in-law and by focusing only on the filing of a timely answer. He

acknowledged that he should have sent the couple a copy of the answer, and he expressed his sincere regret for the oversight. To ensure that he does not repeat the mistake, respondent has redoubled his efforts to keep each client adequately informed of developments in his or her case.

{¶ 12} The parties stipulated and the board found that respondent's acts and omissions in relation to this family's property foreclosure violated DR 5-105(C) and 6-101(A)(2). Because respondent failed to gain all the parties' consent to the multiple representation and did not communicate at all with two of them, we accept that respondent committed this misconduct.

**Sanction**

{¶ 13} In recommending a sanction for this misconduct, the panel and board weighed the aggravating and mitigating factors to which the parties also stipulated and considered their joint proposal for a public reprimand. Adopting the panel's report, the board observed:

{¶ 14} "Mitigating factors include that Respondent has no prior disciplinary record, lacked a dishonest or selfish motive, cooperated in the disciplinary proceedings, and presented evidence of good character and reputation. Respondent submitted twelve letters from fellow lawyers, a judge and clients attesting to Respondent's honesty, integrity, and competence in the practice of law. These witnesses all have had extensive contact with Respondent both before and after he began practicing law thirty years ago in 1979. [See BCGD Proc.Reg. 10(B)(2(a), (b), (d), and (e).]

{¶ 15} "The sole aggravating factor may be vulnerability and resulting harm to the victims of the misconduct. [See BCGD Proc.Reg. 10(B)(1)(h).] However, after considering all the evidence submitted, the panel finds that any financial harm to the grievants had occurred prior to any involvement of Respondent. [The father] borrowed the funds on the mortgage, defaulted on the loan, used the proceeds for other personal items, and rendered the home

uninhabitable and in need of further mortgage and work before he consulted Respondent. The damage to [the son and daughter-in-law's] equity was the result of [the father's] actions, not Respondent's error. Respondent further maintained malpractice insurance with limits of one million dollars and no claim was made against him by [the son and daughter-in-law] relating to this incident."

{¶ 16} In *Disciplinary Counsel v. Ita*, 117 Ohio St.3d 477, 2008-Ohio-1508, 884 N.E.2d 1073, we publicly reprimanded a lawyer who filed a pleading without knowing the identity of his clients. That lawyer, in pursuing a client's personal-injury claim, mistakenly sued for loss of consortium on behalf of the client's wife. The lawyer never communicated with the wife or inquired about her status from his client, and actually, the wife and client were separated. The couple later divorced, and the client ultimately agreed to indemnify his former wife for losses she may have sustained because he settled his personal-injury claim and dismissed the loss-of-consortium claim with prejudice.

{¶ 17} Respondent in this case similarly failed to communicate with clients in a family setting, failed to ascertain their interests, and failed to obtain their informed consent to the multiple representation. But no one has suggested that respondent's "ill-advised actions resulted from anything other than carelessness." Id. at ¶ 10. Moreover, as in *Ita*, "[r]espondent's lack of any enmity, his heretofore unblemished professional record, his established good character and reputation, and his cooperation in these proceedings persuade us that a warning will suffice in this case." Id.

{¶ 18} Respondent is therefore publicly reprimanded for his violations of DR 5-105(C) and 6-101(A)(2). Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

————————————

Terrence A. Grady & Associates Co., L.P.A., and Terrence A. Grady; and Bruce A. Campbell, Bar Counsel, and A. Alysha Clous, Assistant Bar Counsel, for relator.

Mitchell, Catalano & Boda Co., L.P.A., and William Mann, for respondent.

_____